UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ROBERT D. BERRY,

                              Plaintiff,

        -v-

VILLAGE OF MILLBROOK, THE DUTCHESS
COUNTY DISTRICT ATTORNEY'S OFFICE,
INVESTIGATOR STANLEY MARCHINKOWSKI,
DETECTIVE CHARLES LOCKE, JOHN and/or
JANE DOE,

                              Defendants.

Case No. 09-CV-04234 (KMK)

OPINION AND ORDER

Appearances:

Robert D. Berry
Salt Point, New York
*Pro Se Plaintiff*

Steven C. Stern, Esq.
Sokoloff Stern LLP
Westbury, New York
*Counsel for Defendant Village of Millbrook*

David L. Posner, Esq.
McCabe & Mack LLP
Poughkeepsie, New York
*Counsel for Defendants Dutchess County District Attorney's Office and Charles Locke*

KENNETH M. KARAS, District Judge:

        Plaintiff Robert D. Berry ("Plaintiff"), proceeding pro se, brings this action pursuant to

42 U.S.C. § 1983 ("§ 1983") against the Village of Millbrook, New York ("Millbrook"), the

Dutchess County District Attorney's Office ("Dutchess DAO"), Investigator Stanley

Marchinkowski ("Marchinkowski"), Detective Charles Locke ("Locke"), and John and/or Jane

Doe, asserting violations of his Fourth, Sixth, and Fourteenth Amendment rights, with all counts

stemming from his prosecution in the Millbrook Village Court.[1]  Plaintiff also asserts claims under the New York State Constitution.  Defendants Millbrook and the Dutchess DAO filed motions to dismiss, pursuant to Fed. R. Civ. P. 12(b)(6), seeking to dismiss all of Plaintiff's claims against them.[2]  For the reasons stated herein, the motions are granted.

## I.  Background

For purposes of deciding the instant motions to dismiss, the Court accepts as true the allegations contained in Plaintiff's Amended Verified Complaint ("Amended Complaint") and construes them in the light most favorable to Plaintiff.

### A.  Factual Background

On December 13, 2006, Plaintiff was arrested by Locke, a detective with the Dutchess County Sheriff's Office, on charges of: (1) Grand Larceny, in violation of N.Y. Penal Law § 155.35; (2) Offering a False Instrument for Filing in the First Degree, in violation of N.Y. Penal Law § 175.35; and (3) Committing a Fraudulent Practice, in violation of Workers' Comp. Law § 114.3.  (Am. Compl. ¶ 8.)  That same day, Plaintiff was arraigned at the Millbrook Village Court and entered a plea of not guilty.  (*Id.* ¶ 9.)  For the next twenty-four months, Judge Louis Prisco ("Judge Prisco"), an "employee and civil servant" of the Village Court in Millbrook, was the judge presiding over Plaintiff's case.  (*Id.* ¶¶ 9, 20.)  Plaintiff alleges that

---

[1]  In his Verified Complaint and Amended Verified Complaint, Plaintiff also brought suit against The Daily Freeman newspaper, alleging it published a libelous news story on December 24, 2006, about Plaintiff's trial based on false information allegedly provided by Locke and Marchinkowski.  (Verified Compl. ¶¶ 2-3, 5, 25, 28; Am. Verified Compl. ¶¶ 4-6, 26-34.)  On December 17, 2010, Plaintiff voluntarily dismissed the action against The Daily Freeman, without prejudice, pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i).  (Dkt. No. 59.)

[2]  The individual Defendants, Marchinkowski and Locke, did not file motions to dismiss and have filed Answers to Plaintiff's Amended Complaint.

because "[n]o progress was made in expediting a Discovery Hearing or indictment of the charges[,] . . . a letter of a Grand Jury waiver was sent, dated April 24, 2007, to the Millbrook Village Court."  (*Id.* ¶ 10.)   According to Plaintiff,  "upon receiving the letter, a Divestiture to Superior Court, dated May 9, 2007 was filled out" but was "never signed and transmitted to County Court."  (*Id.* ¶ 11.)  Plaintiff alleges that "there is no evidence that the District Attorney ever mitigated the charges to misdemeanors therefore granting jurisdiction to the village court." (*Id.*)

However, Plaintiff alleges that "[d]espite the waiver to the Grand Jury, the village court demanded" that Plaintiff  "continue to appear on a monthly basis."  (*Id.* ¶ 12.)  In three court appearances in 2008, Plaintiff alleges that his then-attorney "tried to explain to the Honorable Judge Prisco that since "[P]laintiff . . . had waived the matter to the Grand Jury in April of 2007[,] . . . the Village Court no longer had jurisdiction at that point and had no legal reason to mandate plaintiff's appearance with an attorney each month."  (*Id.* ¶ 15.)  However, "Judge Prisco disagreed."  (*Id.*)

On September 30, 2008, the Assistant District Attorney ("ADA") moved to reduce the three felony charges to misdemeanors.  (*Id.* ¶ 16.)   Plaintiff "objected on the grounds that there were no charges pending in the Village Court and the court had no jurisdiction to entertain the District Attorney's motion."  (*Id.*)  Judge Prisco asked whether the charges had been presented to the Grand Jury.  (*Id.*)  When the parties explained that the Grand Jury had been waived, Judge Prisco granted the ADA's motion.  (*Id.*)  On January 8, 2009, the prosecution was terminated pursuant to N.Y. Crim. Proc. Law § 180.85. (*Id.* ¶ 17.)[3]

---

[3] N.Y. Crim. Proc. Law § 180.85 provides that "[a]fter arraignment of a defendant upon felony complaint . . . either party or the local criminal court or superior court before which the

B. Procedural Background

On April 7, 2009, Plaintiff filed a Summons with Notice in the Supreme Court of the State of New York, County of Dutchess.  On April 30, 2009, Millbrook removed the case to this Court pursuant to 28 U.S.C. §§ 1331 & 1441(b).  (Dkt. No. 1.)  After it removed the case, Millbrook submitted a letter to the Court, dated May 6, 2009, asserting that Plaintiff's Summons with Notice failed to satisfy the pleading requirements of the Federal Rules of Civil Procedure and requesting that the Court direct Plaintiff to file a complaint in conformance with the Federal Rules.  (Dkt. No. 2.)  In response, the Court requested that Plaintiff file a complaint consistent with the Federal Rules and provided Plaintiff with the contact number of the Southern District of New York's Pro Se Office for assistance.  (Dkt. No. 3.)  Plaintiff complied and filed a Verified Complaint on June 8, 2009, naming Millbrook, the Dutchess DAO, the New York State Insurance Fund ("NYSIF"), The Daily Freeman, and John and/or Jane Doe as defendants.  (Dkt. No. 4.)  In September 2009, Defendants Millbrook and the Dutchess DAO filed motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Dkt. Nos. 20, 22.)  On November 7, 2009, Plaintiff notified the Court: (1) that he was voluntarily dismissing the NYSIF as a Defendant in the case due to 11th Amendment sovereign immunity; and (2) that he intended to serve an Amended Complaint on "the individuals [] not exempt from [] liability" who had been directly involved in the alleged violations of Plaintiff's constitutional rights.  (Letter from Pl. to the Ct. (Nov. 7, 2009) (Dkt. No. 27).)

On January 27, 2010, Plaintiff filed a Motion for Leave to File an Amended Complaint,

---

action is pending, on its own motive, may move . . . for an order terminating prosecution of the charges contained in such felony complaint on consent of the parties."  N.Y. Crim. Proc. Law § 180.85.

seeking to add § 1983 false arrest and malicious prosecution claims and state law defamation claims against Marchinkowski and Locke.  (Dkt. No. 30.)  On September 29, 2010, the Court issued an Opinion and Order granting Plaintiff leave to add the § 1983 claims, but denying leave with respect to the defamation claim.  (Dkt. No. 40.)  In the same Opinion and Order, the Court denied without prejudice the pending motions to dismiss of Millbrook and the Dutchess DAO because Plaintiff would be filing an Amended Complaint.  (*Id.*)  Plaintiff filed his Amended Complaint on October 18, 2010, adding Marchinkowski and Locke as defendants.  (Dkt. No. 41.)  On November 5, 2010, the Dutchess DAO filed a motion to dismiss pursuant to Rule 12(b)(6) (Dkt. No. 42), and Millbrook filed a 12(b)(6) motion dismiss on November 15, 2010, (Dkt. No. 44).  Plaintiff filed an updated Amended Verified Complaint on December 13, 2010 that removed The Daily Freeman as a defendant and Plaintiff's defamation claims but was otherwise identical to the Amended Complaint.  (Dkt. No. 57.)  The Court designated the updated pleading the Second Amended Verified Complaint in an Order dated December 14, 2010.  (Dkt. No. 56.)  Because Millbrook and the Dutchess DAO submitted their motions to dismiss before Plaintiff filed this updated pleading (and because the changes in the Second Amended Verified Complaint did not affect the pending motions in any way), the Court has used the Amended Complaint as the operative document in deciding the pending motions.

## II.  Discussion

### A. Standard of Review

"On a Rule 12(b)(6) motion to dismiss a complaint, the court must accept a plaintiff's factual allegations as true and draw all reasonable inferences in [the plaintiff's] favor."  *Gonzales v. Caballero*, 572 F. Supp. 2d. 463, 466 (S.D.N.Y. 2008); *see also Ruotolo v. City of New York*, 514 F.3d 184, 188 (2d Cir. 2008) ("We review *de novo* a district court's dismissal of a complaint

pursuant to Rule 12(b)(6), accepting all factual allegations in the complaint and drawing all reasonable inferences in the plaintiff's favor." (internal quotation marks omitted)).  In adjudicating a 12(b)(6) motion, a court must confine its consideration to "facts stated in the complaint or documents attached to the complaint as exhibits or incorporated by reference" and facts of which the Court may take judicial notice.  *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005); *see also Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999).

 "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (alteration in original) (citation omitted).  Instead, "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Id.*  A complaint cannot rest solely on conduct consistent with behavior that raises a right to relief; a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."  *Id.* at 547.  If a plaintiff "ha[s] not nudged [his] claims across the line from conceivable to plausible, [his] complaint must be dismissed."  *Id.*  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'"  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009) (alteration in original) (quoting Fed. R. Civ. P. 8(a)(2)).

 In reviewing a pro se complaint, the Court takes into consideration Plaintiff's lack of legal training and holds the complaint "to 'less stringent standards than formal pleadings drafted by lawyers.'"  *Roberts v. IRS*, 468 F. Supp. 2d 644, 649 (S.D.N.Y. 2006), *aff'd*, 297 F. App'x 63

6

(2d Cir. 2008) (quoting *Boddie v. Schneider*, 105 F.3d 857, 860 (2d Cir. 1997)); *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  Furthermore, when considering a motion to dismiss a pro se complaint, the court must interpret the complaint liberally to raise the strongest arguments that the allegations suggest.  *See Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006).  "This policy of liberally construing *pro se* submissions is driven by the understanding that implicit in the right to self-representation is an obligation on the part of the court to make reasonable allowances to protect pro se litigants from inadvertent forfeiture of important rights because of their lack of legal training."  *Id.* at 475 (citing *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983) (internal quotation marks omitted)).  However, mere "conclusions of law or unwarranted deductions" need not be accepted.  *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 771 (2d Cir. 1994) (quoting 2A Moore & Lucas, Moore's Federal Practice ¶ 12.08 (2d ed. 1984)).

      B.  *Monell* Liability

          1.  Guiding Principles

Millbrook and the Dutchess DAO both argue that all of Plaintiff's federal claims against them should be dismissed under *Monell v. Department of Social Services of New York City*, 436 U.S. 658 (1978), and its progeny.  (Mem. of Law in Supp. of Def. Village of Millbrook's Renewed Mot. to Dismiss ("Millbrook Mem.") 3-6; Dutchess County District Att'y's Office Mem. of Law in Supp. of Dismissal ("Dutchess DAO Mem.") 3-4.)

"Congress did not intend municipalities to be held liable [under § 1983] unless action pursuant to official municipal policy of some nature caused a constitutional tort."  *Monell*, 436 U.S. at 691.  Thus, "to prevail on a claim against a municipality under Section 1983 based on acts of a public official, a plaintiff is required to prove: (1) actions taken under color of law; (2)

deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury." *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008). The fifth element reflects the notion that "a municipality may not be held liable under § 1983 solely because it employs a tortfeasor." *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 403 (1997); *see also Newton v. City of New York*, 566 F. Supp. 2d 256, 270 (S.D.N.Y. 2008) ("As subsequently reaffirmed and explained by the Supreme Court, municipalities may only be held liable when the municipality itself deprives an individual of a constitutional right."). In other words, a municipality may not be held liable under Section 1983 "by application of the doctrine of *respondeat superior*." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478 (1986) (plurality opinion); *see also Vassallo v. Lando*, 591 F. Supp. 2d 172, 201 (E.D.N.Y. 2008) (noting that "a municipal entity may only be held liable where the entity *itself* commits a wrong"). Instead, there must be a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989); *see also City of St. Louis v. Praprotnik*, 485 U.S. 112, 122 (1988) ("[G]overnmental bodies can act only through natural persons . . . [and] governments should be held responsible when, and only when, their official policies cause their employees to violate another person's constitutional rights.").

Moreover, "a custom or policy cannot be shown by pointing to a single instance of unconstitutional conduct by a mere employee of the [municipality]." *Newton*, 566 F. Supp. 2d at 271; *see also City of Oklahoma v. Tuttle*, 471 U.S. 808, 823-24 (1985) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker."); *Brogdon v. City of New*

8

*Rochelle*, 200 F. Supp. 2d 411, 427 (S.D.N.Y. 2002) ("A single incident by itself is generally insufficient to establish the affirmative link between the municipal policy or custom and the alleged unconstitutional violation.").   In the end, therefore, "a plaintiff must demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the alleged injury."   *Roe*, 542 F.3d at 37 (quoting *Brown*, 520 U.S. at 404).

"In determining municipal liability, it is necessary to conduct a separate inquiry into whether there exists a 'policy' or 'custom.'"   *Davis v. City of New York*, 228 F. Supp. 2d 327, 336 (S.D.N.Y. 2002), *aff'd*, 75 F. App'x 827 (2d Cir. 2003).   "The Supreme Court has identified at least two situations that constitute a municipal policy: (1) where there is an officially promulgated policy as that term is generally understood (*i.e.*, a formal act by the municipality's governing body), and (2) where a single act is taken by a municipal employee who, as a matter of State law, has final policymaking authority in the area in which the action was taken."   *Newton*, 566 F. Supp. 2d at 271 (internal footnote omitted) (citing *Monell*, 436 U.S. at 690, and *Pembaur*, 475 U.S. at 480-81).   "A municipal 'custom,' on the other hand, need not receive formal approval by the appropriate decisionmaker . . . ."   *Id.*   Instead, "an act performed pursuant to a 'custom' that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law."   *Bd. of Cnty. Comm'rs*, 520 U.S. at 404; *see also Kern v. City of Rochester*, 93 F.3d 38, 44 (2d Cir. 1996) (noting that a municipality's custom "need not be memorialized in a specific rule or regulation").   To prevail on this theory of municipal liability, however, a plaintiff must prove that the custom at issue is permanent and well-settled.   *See Praprotnik*, 485 U.S. at 127 (noting that the Supreme Court "has long recognized that a plaintiff may be able to prove the existence of a widespread practice that, although not authorized by

written law or express municipal policy, is 'so permanent and well settled as to constitute a custom or usage with the force of law'") (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167-68 (1970) (internal quotation marks omitted)).

### 2.  Claims Against Millbrook

Plaintiff asserts claims against Millbrook under § 1983 for malicious prosecution and for violation of his Sixth Amendment right to a speedy trial.  Millbrook argues that Plaintiff's claims are based on purported acts by Judge Prisco and asserts that Millbrook cannot be held liable for the actions of Judge Prisco.

### a.  Malicious Prosecution Claim

Plaintiff alleges that Millbrook "used it's [sic] power to violate [P]laintiff['s] . . . Federal and New York State constitutional rights under color of law."  (Am. Compl. ¶ 20.)  Plaintiff implies that Millbrook violated his rights through the actions of Judge Louis Prisco, who "never challenged the validity of the alleged triple felony and thus permitted his Court to be manipulated by the District Attorney's Office in such a wanton, careless, and highly reckless manner as to rise to the level of intentional culpability."  (*Id.*)  Although Plaintiff does not indicate precisely what type of claim he is alleging, in light of the Plaintiff's pro se status, the Court interprets this claim as one for malicious prosecution.

Plaintiff charges that the violations of his rights were under § 1983 and common law. (*Id.* ¶ 21.)[4]  Specifically, Plaintiff alleges that Judge Prisco allowed himself to be manipulated by

---

[4] Plaintiff does not identify which constitutional rights were violated.  However, the Court is willing to construe Plaintiff's claim as being brought under the Fourth Amendment.  *See Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 115 (2d Cir. 1995) ("[T]he Fourth Amendment is the proper source of constitutional protection for claims, such as malicious prosecution, that implicate a person's liberty interest in respect of criminal prosecutions . . . ."); *Landon v. Cnty. of Orange*, No. 08-CV-8048, 2009 WL 2191335, at *3-4 (S.D.N.Y. July 23, 2009) (analyzing

the Dutchess DAO and allowed the prosecution to proceed in his court improperly and without sufficient evidence, but Plaintiff has alleged no facts indicating that such behavior may have occurred beyond his isolated experience.  To successfully bring a claim against Millbrook under § 1983, *Monell* requires Plaintiff to allege that the purported malicious prosecution was part of a custom or formal policy on the part of Millbrook.  This Plaintiff has failed to do.  Even assuming, arguendo, that Plaintiff's allegations regarding Judge Prisco's alleged misconduct have a factual basis, Plaintiff has failed to allege any connection between these purported constitutional violations and the municipality of Millbrook.  Instead, Plaintiff merely asserts that Judge Prisco is an "employee and civil servant who sat at the Millbrook Court" and "used his power and authority to intentionally deprive [Plaintiff."  (*Id.* ¶ 20)  However, as noted, the Supreme Court has made clear that Millbrook cannot be held liable for any actions on the part of Judge Prisco simply because he is allegedly employed by Millbrook.  *See Bd. of Cnty. Comm'rs*, 520 U.S. at 403; *Pembaur*, 475 U.S. at 478; *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 130 (2d Cir. 2004).  Therefore, the federal claim by Plaintiff against Millbrook fails because "[t]he Amended Complaint lacks *any* factual allegations demonstrating the existence of an officially-adopted policy or custom [by Millbrook] that caused Plaintiff injury and a direct and deliberate causal connection between that policy or custom and the violation of Plaintiff's federally protected rights."  *Joe v. Moe*, No. 10-CV-4417, 2011 WL 2416882, at *5 (S.D.N.Y. June 1, 2011) (alterations and internal quotation marks omitted).[5]

---

plaintiff's complaint "to determine whether it states a claim for malicious prosecution pursuant to the Fourth Amendment" when the plaintiff alleged that his "liberty interests and Fourteenth Amendment right to due process of law" were violated by his arraignment).

[5] The Court notes that Plaintiff did not name Judge Prisco as a Defendant in this action.

In addition, as previously noted, a municipality may also be subject to § 1983 liability for acts of its officials "who have final policymaking authority" in the area in which the action was taken. *Praprotnik*, 485 U.S. at 123 (citing *Pembaur*, 475 U.S. at 483 (internal quotation marks omitted)). "[W]hether a particular official has final policymaking authority is a question of state law." *Id.* "The Second Circuit has not addressed the policymaking authority of judges; however, other circuits have determined that municipal judges do not act as policymakers and therefore a municipality cannot be liable under *Monell* for a Section 1983 claim based solely on the actions of its judges." *Bliven v. Hunt*, 478 F. Supp. 2d 332, 337 & n.2 (E.D.N.Y. 2007), *aff'd*, 579 F.3d 204 (2d Cir. 2009) (citing cases from the Fifth, Seventh, Eighth, Ninth, and Tenth Circuits); *Rodriguez v. City of New York*, No. 02-CV-8203, 2004 WL 444089, at *4 (S.D.N.Y. Mar. 10, 2004) (concluding that holdings of other circuits "that municipal judges do not act as policymakers and therefore a municipality cannot be liable under *Monell* for a section 1983 claim based solely on the actions of its judges . . . is sound and persuasive"). In addition, multiple district courts have determined that under New York law, village and similar judges are not considered policymakers for the purposes of evaluating a *Monell* claim. *See Szymaszek v. Mahar*, No. 06-CV-719, 2008 WL 4518613, at *8 (N.D.N.Y. Sept. 29, 2008) (holding that the City of Troy "cannot be liable through any actions or inactions" by its former city court judge); *Garcha v. City of Beacon*, 351 F. Supp. 2d 213, 218 (S.D.N.Y. 2005) (noting that "a municipality is not liable, vicariously, for an official act of one of its judges"); *Estes-El v. Town of Indian Lake*, 954 F. Supp. 527, 536 (N.D.N.Y. 1997) (holding that a Town Judge is not a policymaker for the Town because "the jurisdiction of his court as well as the requirements of his job are prescribed by state law" and "his decisions are not final because they are appealable to higher courts within the state court system" and, "[t]herefore, . . . the Town is not responsible

for [the] Judge['s] conduct when he acts in his judicial capacity, as he did in the present case").
The Court agrees with these courts and concludes that Judge Prisco is not a policymaker for
Millbrook.

In his opposition to Millbrook's motion, Plaintiff also suggests that Millbrook trains the
justices who serve in the Village and that, therefore, Millbrook has an obligation to protect
litigants and ensure that Village Court proceedings are carried out efficiently.  (Pl. Opp'n to
Millbrook's Mot. to Dismiss ("Pl.'s Opp'n to Millbrook") at unnumbered page 3 (Dkt. No. 54).)
Although not raised in his pleadings, in light of Plaintiff's pro se status, the Court construes this
as a charge that Millbrook failed to properly train its judges.  However, despite Plaintiff's
contention to the contrary, New York village judges are not trained by the villages in which they
serve.  Village judges' training, as well as the rules they must follow, are imposed by the state
legislature and the chief administrator of the courts, not the individual villages.  *See* N.Y. Const.,
art. VI, § 20; *see also Estes-El*, 954 F. Supp. at 536 (noting that "New York municipal courts are
part of the unified court system for the state" and that "when a municipal judge enforces state
law he does not act as a municipal official or lawmaker, but rather serves only to effectuate state
policies" (alteration and internal quotation marks omitted)).

In addition, even if Millbrook was responsible for the training of its village judges,
Plaintiff still has not sufficiently alleged a § 1983 violation.  Plaintiff argues, without providing
any factual basis, that Village Boards are supposed to review case dockets annually, and implies
that the "venue of [his] case for over two years, and the decisions of the Village Justice Staff
refusing Plaintiff . . . of his rights of due process were . . . an [sic] approved act by its' [sic]
policy makers for the Village of Millbrook."  (Pl.'s Opp'n to Millbrook at unnumbered pages 3-
4.)  However, even if Plaintiff could plausibly allege that Millbrook was aware of the delay

13

because of the annual review – which is itself an implausible stretch – judges are creatures of

state law and, thus, Millbrook cannot be liable under *Monell* for actions involving village judges'

dockets over which Millbrook has no control.  *See Rodriguez*, 2004 WL 444089, at *4

(concluding that because a municipal judge is an employee of the State and not the municipality,

"even if the judge's actions had amounted to that of a policymaker, the [municipality] would not

be liable under *Monell*").

      Moreover, Plaintiff still has not suggested that any municipal policymaker or municipal

policy or custom was responsible for violations of any litigants' rights apart from Plaintiff's own

alleged experience, and "[p]roof of a single incident of unconstitutional activity is not sufficient

to impose liability under *Monell*, unless proof of the incident includes proof it was caused by an

existing, unconstitutional municipal policy, which policy can be attributed to a municipal

policymaker." *Tuttle*, 471 U.S. at 823-24; *see also Connick v. Thompson*, 131 S. Ct. 1350, 1356

(2011) (noting that a municipal office may not be held liable under § 1983 for failure to train

based on a single constitutional violation).  To reiterate, Judge Prisco is not a policymaker for

the purposes of an alleged § 1983 violation.  *See Estes-El*, 954 F. Supp. at 536.  And, despite

Plaintiff's passing reference in his opposition papers to an approved act by Millbrook's

policymakers, Plaintiff has failed to identify any such policymaker, or explain how the purported

violation was committed by these town policymakers who have no authority over municipal

judges.  Accordingly, because neither Plaintiff's Amended Complaint nor memorandum of law

plausibly allege any basis for holding Millbrook liable under *Monell*, Plaintiff's § 1983

malicious prosecution claim against Millbrook is dismissed.

### b.  Sixth Amendment Claim

Plaintiff also alleges that Judge Prisco, an "employee and civil servant who sat at the Millbrook Court, as such, used his power and authority to intentionally deprive" Plaintiff of "his Sixth Amendment Right to a speedy trial of the Federal Constitution and the same right under the New York State Constitution by granting adjournments for a period of 20 months, without even so much as sufficiency of evidence to sustain any accusatory information."  (Am. Compl. ¶ 20.)  However, Plaintiff has again failed to allege any basis for holding Millbrook liable for this purported federal constitutional violation.  In his Amended Complaint, Plaintiff does not allege any custom or policy of Sixth Amendment violations by Millbrook and, in his opposition papers, Plaintiff continues to argue that Judge Prisco violated his rights without making any reference to any wrongdoing by Millbrook, any act by a Millbrook policymaker, or any policy or custom, let alone alleging any facts that could plausibly give rise to a *Monell* claim against Millbrook for speedy trial violations.  Simply put, allegations of adjournments, without more, are insufficient to survive a 12(b)(6) motion to dismiss because Plaintiff has not plausibly alleged – as distinguished from offering a conclusory claim of – a policy or custom violating defendants' speedy trial rights.  *See Claudio v. City of New York*, No. 05-CV-1875, 2007 WL 678370, at *1 (S.D.N.Y. Mar. 5, 2007) (holding that the plaintiff's claim that the city violated her Sixth Amendment right to a speedy trial because the Department of Probation sought many adjournments of her probation proceeding failed, because "injuries directed at a single individual, without more, are not sufficient proof of the existence of a policy to survive a motion to dismiss" by a municipality).  And, as already discussed, Judge Prisco is not a policymaker for Millbrook.  Accordingly, Plaintiff's Sixth Amendment speedy trial claim against Millbrook is

dismissed.[6]

### 2. Claims Against the Dutchess DAO

Plaintiff also asserts claims against the Dutchess DAO under § 1983 for malicious

prosecution.[7]   The Dutchess DAO argues that Plaintiff's claim against it should be dismissed

---

[6] Defendants also raise serious questions about the viability of Plaintiff's Sixth Amendment claim on the merits, but the Court need not reach those questions in light of the deficiencies in Plaintiff's *Monell* allegations.

[7] The Dutchess DAO argues that Plaintiff's Amended Complaint should be dismissed because Plaintiff merely alleges that the Dutchess DAO violated Plaintiff's civil rights "under color of law pursuant to 42 U.S.C. § 1983 and Common Law," without specifying which of Plaintiff's constitutional or statutory rights were violated.  (Dutchess DAO Mem. 4-5.) However, the Court believes that Plaintiff is attempting to assert a claim of malicious prosecution against the Dutchess DAO and, in light of Plaintiff's pro se status, has construed Plaintiff's allegations as such.  In addition, in his opposition papers, Plaintiff confirms his intention to assert a malicious prosecution claim against the Dutchess DAO (Pl.'s Opp'n to Dutchess DAO at unnumbered page 2), which, as noted above, raises a Fourth Amendment claim.

However, in his memorandum of law, Plaintiff also asserts that "[i]n the reading of the complaint as a whole document, it addresses the facts that the departments worked together ignoring any facts as to the truth of the matter which led to the allegations of . . . Attempted Extortion."  (*Id.*)  Plaintiff elaborates that the Dutchess DAO "promote[d] a guilty plea by means of extortion to assist the State Insurance Fund in an attempt to collect an amount of approximately $25,000.00 of Insurance Premium Debt."  (*Id.* at unnumbered page 3.)  Although the Court is, as always, cognizant of Plaintiff's pro se status and the need to construe pro se pleadings liberally, none of Plaintiff's pleadings contains any such allegations, nor any statements that could remotely suggest a plausible claim for extortion.  Accordingly, the Court has not considered these statements in deciding this instant motion.  If Plaintiff wishes to file a Third Amended Complaint, he may include additional facts and allegations that he believes set forth actionable violations.

In addition, the Court notes that Plaintiff references alleged violations of the ABA Model Code of Professional Responsibility by the Dutchess DAO.  (*Id.* at unnumbered pages 2-3.) While, of course, attorneys in the Dutchess DAO must comply with the state's rules of professional conduct, any purported failure to do so does not give rise by itself to liability under §1983 for which an individual may recover civil damages, as the rules of professional conduct do not confer either federal constitutional or statutory rights.  *See Albright v. Oliver*, 510 U.S. 266, 271 (1994) ("Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating *federal* rights elsewhere conferred." (emphasis added) (internal quotation marks omitted)).

because the Amended Complaint contains no allegation that there was any policy or custom by the Dutchess DAO, as required to hold it liable under *Monell*.  (Dutchess DAO Mem. 3-4.)

Plaintiff alleges that the Dutchess DAO "used it's [sic] great discretionary and accusatory power against [P]laintiff . . . in a wanton, careless and highly reckless manner, having failed to responsibly marshal and inspect clear unequivocal exculpatory evidence" which "r[ose] to the level of an intentional use of it's [sic] great power . . . to deprive plaintiff . . . of his civil rights" and "continued to press an unfounded case."  (Am. Compl. ¶ 23.)[8]  Plaintiff also claims that the Dutchess DAO allowed the prosecution to continue without questioning the validity of the charges and that it worked with the Village Court to proceed with an unfounded case.  (*Id.* ¶¶ 20, 23.)  He further asserts that "[t]here is no evidence that the District Attorney ever mitigated the [felony] charges [against Plaintiff] to misdemeanors" – which Plaintiff maintains would have "grant[ed] jurisdiction to the [V]illage [C]ourt" (*id.* ¶ 11) – until September 30, 2008, when an Assistant District Attorney "moved to reduce the three pending Felony charges to three Misdemeanors" in the Village Court, despite Plaintiff's objection "that there were no charges pending in the Village Court," (*id.* ¶ 16).

Again, to maintain a claim against a municipal entity such as the Dutchess DAO, Plaintiff must allege "that an official policy of the municipality caused the constitutional injury" for which Plaintiff seeks recovery.  *Roe*, 542 F.3d at 36.  Here, although Plaintiff alleges that the Dutchess DAO intentionally violated his rights, the Amended Complaint makes no attempt to allege that any purported violation was the result of any kind of policy or custom.  Indeed,

---

[8] Though he does not label it as such, the Court construes this claim as alleging a violation of the Due Process Clause of the Fifth and Fourteenth Amendments.  *See Brady v. Maryland*, 373 U.S. 83, 87 (1963) (holding that the Due Process Clause requires prosecutors to disclose exculpatory evidence to the accused).

Plaintiff has not alleged that any wrongful conduct was directed at anyone other than Plaintiff. For example, Plaintiff has given no indication that evidence was supposedly withheld beyond his single isolated experience; thus, he has failed to allege that there was a well-settled or widespread practice of withholding evidence or that the Dutchess DAO was put on notice of unconstitutional behavior.  Plaintiff also has not alleged that the Dutchess DAO as an entity customarily pursued unfounded cases against others.  Nor has Plaintiff alleged that the Dutchess DAO had a formal policy of such misconduct.

In his opposition to the Dutchess DAO's motion, Plaintiff claims that the misconduct was pervasive throughout the entire District Attorney's Office.  Plaintiff maintains that "it was not a single 'Tort Feasor' who intentionally caused the abusive delay or willful denial" of Plaintiff's due process rights; instead Plaintiff claims that there was "a Departmental chain of order passed down from the District Attorney, Bureau Chief, Assistant D.A., to their investigative staff." (Pl.'s Opp'n to Dutchess DAO Mot. to Dismiss ("Pl.'s Opp'n to Dutchess DAO") at unnumbered page 4.)  Plaintiff argues that "[a]ll individuals . . . could have discontinued their prosecution and prevented any harm in this empty case bearing no facts or evidence," and that the office "instead[] pressed on in hopes to obtain a guilty plea to perserve the integrity of [the Dutchess DAO's] face to the public."  (*Id.*)  According to Plaintiff, "[t]his pattern and practice rose to a level of a policy as articulated in *Monell*."  (*Id.* at unnumbered page 5.)

Plaintiff misunderstands the requirements of *Monell* liability.  The fact that Plaintiff alleges that multiple people in the District Attorney's Office participated in the violation does not transform his isolated experience into a policy or custom on the part of the Dutchess DAO. Plaintiff still does not suggest that the Dutchess DAO had a policy or custom of violating the rights of any criminal defendant besides Plaintiff, and "[p]roof of a single incident of

18

unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker." *Tuttle*, 471 U.S. at 823-24.  The Court does note that Plaintiff's memorandum of law contains a reference to a chain of command that included the District Attorney.  Although district attorneys may be considered policymakers for purposes of municipal liability under § 1983, *see Frank v. Relin*, 1 F.3d 1317, 1327 (2d Cir. 1993), Plaintiff has not plausibly alleged culpable knowledge, let alone any unconstitutional act, on the part of the Dutchess District Attorney.  Even if the Court considers the statements contained in Plaintiff's memorandum of law as if they were included in his Amended Complaint, Plaintiff has made only conclusory statements regarding possible involvement by a policymaker. Under the plausibility standard set forth in *Iqbal*, this is plainly insufficient to state a § 1983 claim against the Dutchess DAO as a municipality and survive a motion to dismiss.  *See Plair v. City of New York*, No. 10-CV-8177, 2011 WL 2150658, at *8 (S.D.N.Y. May 31, 2011) (dismissing the plaintiff's claim because his reliance on conclusory allegations "render[ed] his *Monell* allegations insufficient under *Twombly* and *Iqbal*"); *see also Mayes v. N.Y.C. Police Dep't*, No. 10-CV-1690, 2011 WL 2206739, at *6 (S.D.N.Y. June 6, 2011) (recommending dismissal, post-*Twombly*, of *Monell* claim that was supported only by conclusory allegations and no factual support).  Because Plaintiff has failed to plausibly allege any policy or custom on the part of the Dutchess DAO, or any unconstitutional act by a policymaker with final decision making authority, Plaintiff's federal claim against the Dutchess DAO is dismissed.

### C.  Notice of Claim

Millbrook and the Dutchess DAO also each argue that any claims that Plaintiff asserts against them under New York State common law are barred by Plaintiff's failure to serve a

19

notice of claim.  (Millbrook Mem. 10; Dutchess DAO Mem. 5-6.)  Plaintiff alleges that he filed a timely notice of claim as required by law by April 2, 2009.  (Am. Compl. ¶ 18.)  However, Defendants argue that the purported notice of claim "is actually a Summons with Notice, filed in the Dutchess County Clerk's Office."  (Millbrook Mem. 10.)  A review of Plaintiff's initially-filed Verified Complaint shows Defendants' contention to be correct.  The Verified Complaint, which was filed on June 8, 2009, also alleges that Plaintiff filed a timely notice of claim (Verified Compl. ¶ 17), and cites and attaches as support the Summons with Notice dated April 2, 2009 that Plaintiff filed in Supreme Court of the State of New York, County of Dutchess, to initiate this action, (*id.* Ex. 1).

"[I]n a federal court, state notice-of-claim statutes apply to *state*-law claims."  *Hardy v. N.Y.C. Health & Hosps. Corp.*, 164 F.3d 789, 793 (2d Cir. 1999); see also *Warner v. Vill. of Goshen Police Dep't*, 256 F. Supp. 2d 171, 175 (S.D.N.Y. 2003) ("The notice of claim requirements apply equally to state court claims brought as pendent claims in a federal civil rights action.").  New York law "provides that no tort action shall be prosecuted or maintained against a municipality or any of its officers, agents, or employees unless: (1) a notice of claim has been served against the [municipality]; (2) the [municipality] has refused adjustment or payment of the claim; and (3) the action is commenced within one year and ninety days after the event upon which the claim is based occurred."  *Gibson v. Comm'r of Mental Health*, No. 04-CV-4350, 2006 WL 1234971, at *5 (S.D.N.Y. May 8, 2006) (citing N.Y. Gen. Mun. Law § 50-i).  Plaintiffs are required to serve the notice of claim "within ninety days after the claim arises."  N.Y. Gen. Mun. Law § 50-e(1)(a).  This notice-of-claim requirement is "construed strictly by New York state courts," and "[f]ailure to comply with these requirements ordinarily requires a dismissal for failure to state a cause of action."  *Hardy*, 164 F.3d at 793-94 (citation and internal

20

quotation marks omitted).

Here, Plaintiff seemed to mistakenly believe that his filing of a "Summons with Notice" in state court satisfied New York's notice-of-claim requirement.  However, the New York statute plainly provides that a separate notice of claim must be filed *prior* to the initiation of a lawsuit. *See* N.Y. Gen. Mun. Law § 50-i(1).  The notice-of-claim statute would be rendered meaningless if the initiation of a lawsuit in state court relieved a plaintiff of the duty to file a notice of claim with a municipality.  As the Second Circuit has explained, "[t]he purpose of the notice-of-claim requirement is to afford the municipality an adequate opportunity to investigate the claim in a timely and efficient manner and, where appropriate, to settle claims without the expense and risks of litigation."  *Hardy*, 164 F.3d at 794 (citations and internal quotation marks omitted).  Thus, although Plaintiff's initiation of a state court suit by filing a Summons with Notice in state court may have actually provided notice of his claims, it cannot be considered a properly-filed notice of claim under the statute.

Plaintiff acknowledges this point in his opposition to the Dutchess DAO's motion, stating that "[a]s per New York G.M.U. Law 50-E Notice of Claim was not filed within the 90 days, the commencement of the action was."  (Pl.'s Opp'n to Dutchess DAO at unnumbered page 5.) Plaintiff then notes that after Millbrook removed the case to this Court, the Court ordered Plaintiff to file a proper complaint consistent with the Federal Rules of Civil Procedure, which Plaintiff apparently interprets as the Court exercising discretion to allow the case "to proceed with the filing of a Late Notice of Claim."  (*Id.*)[9]

---

[9] As explained *supra* Section I.B, after removing the case to federal court, Millbrook asked the Court to direct Plaintiff to file a complaint in conformance with the Federal Rules (Dkt. No. 2), a request which was granted by the Court, (Dkt. No. 3).

Although the Court is sympathetic to the difficulties encountered by a pro se litigant such as Plaintiff, Plaintiff's argument is unpersuasive.  By requesting that Plaintiff file a complaint consistent with the Federal Rules after his case was removed, the Court did not grant Plaintiff permission to file a late notice of claim.  New York's notice-of-claim statute is a state law requirement entirely distinct from the pleading requirements of the Federal Rules of Civil Procedure.  And, in response to the Court's direction, Plaintiff filed his Verified Complaint on June 8, 2009 (Dkt. No. 4); he did not file a notice of claim.  As already noted, filing a complaint is not the same thing as filing a notice of claim, which has a specific meaning under New York law.

Moreover, although this Court is currently presiding over Plaintiff's case, this Court does not have jurisdiction to grant Plaintiff leave to serve a late notice of claim.  New York law provides that "[u]pon application, the court, in its discretion, may extend the time to serve a notice of claim," and lists several factors to consider in determining whether to grant an extension.  N.Y. Gen. Mun. Law § 50-e(5).  The statute also provides that "[a]ll applications under this section shall be made to the supreme court or to the county court."  *Id.* § 50-e(7).  The Second Circuit has not definitively ruled on whether a federal district court may grant a request to extend time to serve the notice of claim.  *See Corcoran v. N.Y. Power Auth.*, 202 F.3d 530, 540 (2d Cir. 1999) (noting that the "appropriate state court may extend the time to file a notice of claim" under § 50-e, but declining to decide "whether the federal court has such jurisdiction" because the request for leave to file a late notice of claim was properly denied on the merits); *cf. Parise v. N.Y.C. Dep't of Sanitation*, No. 03-CV-1673, 2007 WL 2746912, at *7 (E.D.N.Y. Sept. 19, 2007) ("[T]here is an open question as to whether a federal district court, as opposed to a state supreme court or a county court, has jurisdiction to permit the amendment of a notice of

22

claim."), *aff'd*, 306 F. App'x 695 (2d Cir. 2009).  However, district courts within the Second

Circuit "have routinely found that they lack jurisdiction to even consider such an application."

*Humphrey v. Cnty. of Nassau*, No. 06-CV-3682, 2009 WL 875534, at *21 (E.D.N.Y. Mar. 30,

2009) ("This [c]ourt agrees with the overwhelming weight of authority among district courts in

the Second Circuit and finds that Section 50-e(7) permits only certain state courts – 'the supreme

court or the county court' in certain counties – to consider and to grant an application for an

extension of time in this context."  (alteration omitted) (collecting cases)); *see also Harris v.*

*Howard*, No. 08-CV-4837, 2010 WL 2404293, at *1 (S.D.N.Y. June 15, 2010) ("A federal judge

does not have the power to authorize the filing of a late notice of claim against [a

municipality].");  *Costabile v. Cnty. of Westchester*, 485 F. Supp. 2d 424, 431 (S.D.N.Y. 2007)

(holding that district court "lack[ed] jurisdiction to decide plaintiffs' application to serve a late

notice of claim"); *Gibson*, 2006 WL 1234971, at *5 ("Federal courts do not have jurisdiction to

hear complaints from plaintiffs who have failed to comply with the notice of claim requirement,

or to grant permission to file a late notice."); *Polite v. Button*, 999 F. Supp. 705, 708 (N.D.N.Y.

1998) (concluding that district court lacked "jurisdiction to entertain plaintiff's motion for leave

to file a late notice of claim," because "[s]uch applications must be made to the supreme or

county court"); *Brown v. Metro. Transp. Auth.*, 717 F. Supp. 257, 260 (S.D.N.Y. 1989) ("Until

the state legislature amends § 50-e(7) to include federal trial courts, [the court has] no choice but

to dismiss for lack of jurisdiction plaintiff's application to file a late notice of claim or to have his

notice of claim deemed timely filed.").  Therefore, this Court lacks jurisdiction, pursuant to § 50-

e(7), to grant Plaintiff an extension of time to file a late notice of claim.  Accordingly, all of the

state law claims asserted by Plaintiff against Millbrook and the Dutchess DAO are dismissed.

### III. Conclusion

For the reasons stated herein, the motions to dismiss of Millbrook and the Dutchess DAO are granted. However, "[a] district court 'should not dismiss a pro se complaint without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated.'" *Baptista v. Hartford Bd. of Educ.*, No. 09-CV-3470, 2011 WL 2456360, at *2 (2d. Cir. June 21, 2011) (summary order) (alteration omitted) (quoting *Branum v. Clark*, 927 F.2d 698, 705 (2d Cir. 1991)); *see also Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983) ("Trial courts have been directed to . . . allow amendment of *pro se* complaints fairly freely." (internal quotation marks omitted)). While Plaintiff has filed two Amended Complaints, this is the first time he has been alerted to the deficiencies in his allegations of municipal liability. This dismissal is, therefore, without prejudice. Plaintiff may file an Amended Complaint, if he so chooses, consistent with this Opinion and Order, within 45 days of the date of this Opinion and Order. The Clerk of Court is respectfully directed to terminate the pending motions (Dkt. Nos. 42 and 44).

SO ORDERED.

Dated:      White Plains, New York
            September 23, 2011

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

Service List (via Mail by the Clerk's Office)

Robert D. Berry
2517 Route 44, 11-126
Salt Point, NY 12578
*Pro Se Plaintiff*

Steven C. Stern, Esq.
Sokoloff Stern LLP
355 Post Avenue, Suite 201
Westbury, NY 11590
(516) 334-4500
sstern@sokoloffstern.com
*Counsel for Defendant Village of Millbrook*

David L. Posner, Esq.
McCabe & Mack LLP
63 Washington Street
P.O. Box 509
Poughkeepsie, NY 12602
(845) 486-6800
dposner@mccm.com
*Counsel for Defendants Dutchess County District Attorney's Office and Charles Locke*